The CITY OF McALESTER, Oklahoma, a Municipal Corporation, Plaintiff in Error,

v.

Donald M. KING and Marjorie J. King, Defendants in Error.

No. 37514.

Supreme Court of Oklahoma.

Oct. 29, 1957.

Arnote, Arnote & Bratton, Walter J. Arnote, McAlester, for plaintiff in error.

Robert J. Bell, Charles B. Tucker, McAlester, for defendants in error.

WILLIAMS, Justice.

This action. was brought by Donald M. King and Marjorie J. King, hereinafter referred to as plaintiffs, against the City of McAlester, Oklahoma, hereinafter referred to as defendant, for the recovery of damages for injury to plaintiffs' property alleged to have been caused by the construction of a water tower by defendant on the lot adjacent to plaintiffs' property in the City of McAlester.

Judgment upon the verdict of the jury was rendered in favor of plaintiffs and against defendant for damages in the sum of $3,800, and defendant has perfected this appeal. Defendant asserts that the basic issue presented by this appeal is whether a property owner is entitled to recover damages because of the construction of a municipal water storage tank on adjacent property.

Plaintiffs filed their petition on May 17, 1955, alleging that they are the owners and in possession of, as their homestead, the westerly 50 feet of lot 3, block 532, City of McAlester, and that the defendant is the owner of the immediately adjacent lot 4, block 532; that during 1955 defendant built a water tower on said lot 4, which water tower is permanent in nature and is of bell type construction wtih a capacity of 1,000,-000 gallons of water. Paragraph four of said petition is as follows:

"That plaintiffs have suffered, still suffer and will continue to suffer a special and peculiar injury resulting from this uncompensated and damage to their homestead by the defendant, aforesaid, in that plaintiffs and their children have been, do now, and will hereafter live in constant threat of danger from the collapse of said water tower, or from objects falling therefrom, said water tower of defendant being so immediately adjacent to the plaintiffs' premises as to subject the plaintiffs to danger of said falling objects, overflow and collapse. Plaintiffs further show that the said water tower, as well as the home of the plaintiffs, is located on the peak of the highest hill in the City of McAlester; that the prevailing winds of tornadic proportions come from the southwest and due to the unusual height of the water tower with great force and violence; that said water tower and tank constitute a constant invitation to the children of the plaintiff[s] to play thereon and cause constant apprehension to the plaintiffs of death or injury; that same is unsightly to such extent that it has further damaged the sales value of the property of the plaintiffs; that by virtue of the matters and things hereinbefore set forth, the defendant has virtually destroyed the value of the plaintiffs' premises for residential purposes."

The petition then alleges that the fair cash market value of plaintiffs' property was reduced from $7,500 to $2,500 by virtue of the above matters, and prays judgment in the amount of $5,000.

Defendant moved the court to require plaintiffs to make their petition more definite and certain by stating in what particulars there is danger from the collapse of said water tower, in what particulars there is danger of objects falling from the tower, how and in what manner said water

tower can overflow, and in what particulars the tower is unsightly; moved the court to strike from plaintiffs' petition the allegations of danger of the threat of collapse of said water tower, of danger of the threat of objects falling from the tower, that the tower causes apprehension of death or injury to children from playing on the tower, and that the tower is unsightly, for the reason that none of those allegations stated a cause of action against the defendant; and demurred to the petition for the reason that the same does not state facts sufficient to constitute a cause of action in favor of plaintiffs and against defendant. Such motions and demurrer were overruled by the trial court.

■ As its first proposition of error, defendant asserts that in the absence of physical injury to the property, or the impairment of an appurtenant right thereto, that portion of section 24, art. 2 of the constitution, providing that private property shall not be damaged for public use without just compensation, has no application to the depreciation of the market value of a parcel of land in use for residential purposes, where said depreciation has been caused by erection of city water tower in close proximity thereto, and that the trial court therefore erred in overruling the above mentioned motions and demurrer.

■ The section of our State Constitution above mentioned, upon which plaintiffs rely for their recovery, provides:

"Private property shall not be taken or damaged for public use without just compensation."

Plaintiffs do not allege or contend that any of their property has been taken, but do contend that their property has been damaged by virtue of the public construction on the adjacent property.

The rule applicable to cases of this kind has been well stated in the syllabus of City of Geary v. Moore, 181 Okl. 616, 75 P.2d 891, which is as follows:

"In the absence of physical injury to the property, or the impairment of an appurtenant right thereto, that portion of section 24, art. 2, of the Constitution, providing that private property shall not be damaged for public use without just compensation, has no application to the depreciation of the market value of a parcel of land in use for residence purposes, where said depreciation has been caused by the erection of a city jail in close proximity thereto and where the public use is not of such character as to constitute a nuisance."

■ A water tower is not a nuisance per se. Plaintiffs' petition contains no allegation that, due to improper, careless, or negligent construction, maintenance, or operation, the same has become a nuisance, and there is no allegation of physical injury to plaintiffs' property, or the impairment of an appurtenant right thereto. Given its most liberal construction, plaintiffs' petition consists of no more than an allegation of apprehension on the part of plaintiffs that the water tower will collapse or that objects will fall from the water tower or that the water tower will overflow, or that their children will be attracted to play on the tower and be injured, and an affirmative allegation that the water tower is unsightly. Plaintiffs' petition here is strikingly similar to the one involved in Barrows v. City of Sycamore, 150 Ill. 588, 37 N.E. 1096, 1098, 25 L.R.A. 535, and in Doyle v. City of Sycamore, 193 Ill. 501, 61 N.E. 1117, 1119. Both of such cases involved damages alleged to have resulted from the construction of a municipal water tower in the street adjacent to the property of the plaintiff. In the Barrows case, supra, the Illinois Court said:

"The special injury attempted to be set up in each of these counts is that her property has been depreciated in value, because of the danger of the building being destroyed or damaged by the standpipe falling or being blown upon it, or by bursting and flooding it with water, but not a single fact is alleged upon which the apprehension of such danger can be based. In the first count, nothing but the apprehension itself is

alleged; and in the second and third, merely that it (the standpipe) is 'liable' to fall, blow over, or burst. Why the apprehension exists, or why it is liable to fall, etc., is left wholly to conjecture. It certainly will not be contended that the manner in which it is constructed, as shown by the declaration, necessarily renders it dangerous. No one will deny that such a structure could be rendered reasonably secure by proper stays and braces, though it might not be so without. True, as in the instances referred to by counsel for appellee, water towers and standpipes have fallen or been destroyed, but the same is true of every kind of buildings,—perhaps of all superstructures. If this one is liable to fall, blow down, or burst, that liability must arise from certain facts, and those facts must be pleaded. Here we have nothing but the mere conclusion of the pleader."

In the Doyle case, supra, the court said:

"It will be seen that each count of the original declaration attempts to base a right of recovery upon the mere apprehension that the standpipe will fall, blow over, or burst; and, in the second count, that it is liable to do so, without in any way attempting to show upon what such apprehension or liability is based, or that, if it should fall or blow over, it would necessarily destroy the plaintiff's property, there being nothing from which it can be inferred that it might not fall or be blown in an opposite or different direction. We have frequently held that, in order to entitle a plaintiff to recover damages to property not taken in a proceeding to condemn private property for public use, only such damages as are real and substantial can be recovered. Such as are merely imaginary or conjectural can never be made the subject-matter of a cause of action. It will scarcely be contended that the mere fear or liability that his or her property would be damaged by the erection of a structure upon a street or upon adjoining lands will give such party a right of action for special damages."

We think it apparent that plaintiffs' petition did not state a cause of action, and that the court erred in overruling the demurrer thereto. Because of further developments in the case, hereinafter set forth, however, this appeal cannot be disposed of solely on this proposition.

After its demurrer was overruled, defendant filed an answer alleging that the water tower was erected and constructed according to the plans adopted by the City Council of the City of McAlester; that said plans and specifications were reasonable and prepared by competent engineers and were approved by the State Board of Health; that in adopting the plans and specifications defendant was acting in a governmental capacity and is not liable for any injuries plaintiffs might have sustained; that the water tower is constructed in a good and workmanlike manner and constitutes no hazard to the plaintiffs; and that plaintiffs have not been damaged by the erection of the water tower.

Upon trial of the cause to a jury, plaintiffs offered some testimony relative to matters not alleged in their petition, to which defendant objected, but the objection was overruled. Thereafter, and shortly before resting their case, plaintiffs moved to amend their petition "to conform to the proof". Such motion was granted, over the objection of the defendant, and a written amendment to the petition was filed, which is as follows:

"That plaintiffs have suffered, still suffer and will continue to suffer special and peculiar injury resulting from the erection of the standpipe or water tower, in that the wind whistling through the supports of said water tower create a disagreeable noise; said standpipe cuts off adequate light from the residence of the plaintiffs; that the weight of said standpipe has caused the ground to shift and cracks to come in the yard of plaintiffs; that during rain storms water from the top of said standpipe strikes their home

with great force and is washing away their yard; that the standpipe increases danger from lightning and that overflow from said standpipe causes mud to accumulate in front of their home."

In addition to objecting to the amendment, defendant moved for a continuance or a mistrial, which motion was also overruled. At the conclusion of plaintiffs' evidence, defendant demurred thereto, which demurrer was overruled, and at the conclusion of all of the evidence such demurrer was renewed and again overruled. All of the rulings of the trial court just above mentioned are assigned as error in defendant's next three propositions.

 It should be noted that the allegations of the amendment to the petition filed during the trial were a radical departure from the allegations of the original petition. The original petition alleged nothing but conclusions, and did not even state a cause of action, whereas the amendment thereto alleged completely new and different items of damage. It should also be borne in mind that such amendment was allowed on the theory that it was to amend the petition to conform to the proof. In order to determine the correctness of the court's action in allowing such amendment, it therefore becomes necessary to review the various allegations of the amendment, and the status of the proof in connection wtih each such allegation. The first allegation of the amendment is that wind whistling through the supports of the water tower creates a disagreeable noise. Noise is not a nuisance per se, but it may be of such character as to constitute a nuisance in fact. Generally speaking, whether a noise is a nuisance depends on the nature of the locality, on the degree of intensity and disagreeableness of the sounds, on their times and frequency, and on their effect, not on peculiar and unusual individuals, but on ordinary, normal, reasonable persons. Smilie v. Taft Stadium Board of Control, 201 Okl. 303, 205 P.2d 301; 66 C.J.S. Nuisances § 22, p. 772. There was no allegation of either noise or nuisance in the original petition. The proof with respect to

noise consisted of testimony by one of the plaintiffs that during a hard wind and rain it makes an awful roaring noise, and that it gets pretty loud during heavy winds, kind of a roaring, and the testimony of another witness that "well, that tower, it just sounds like a cyclone coming through there when the wind is blowing hard." Both of these items of testimony were objected to by defendant, who specifically called attention to the fact that the petition contained no allegation of any noise. In Pinkstaff v. State, 112 Okl. 91, 240 P. 107, we held that it was error for the trial court to permit an amendment to conform to the facts proven when such facts are admitted over the objection of defendant and are not within the issue. The same holding was made in Northwest Thresher Company v. McNinch, 42 Okl. 155, 140 P. 1170. It would therefore appear that the court erred in permitting the first allegation of the amendment to the petition.

 The second allegation of the amendment to the petition is that the standpipe cuts off adequate light from the residence of the plaintiffs. This allegation is not only not within the issues presented by the original petition, but is not supported by the evidence, and states no part of a cause of action in any event. Plaintiffs did not allege, contend or prove that they had an easement of light, air or view in or over defendant's lot, and such being the case they have no cause for complaint if these were interfered with or entirely shut off by the erection of the water tower or any other lawful structure on defendant's property. Bixby v. Cravens, 57 Okl. 119, 156 P. 1184. Plaintiffs cite Barrows v. City of Sycamore, supra, as authority that this allegation does state a cause of action. In that case, however, the water tower was built in a public street, and the court held such construction to be unlawful. Furthermore, it is the general rule that even when the fee of a public street is in the city, abutting owners hold easements of access, light, and air from the street appurtenant to their land. 18 Am.Jur. 812. Eminent Domain, sec. 181. The water tower in the

case at bar, however, was not built in or on a public street or any other property over which plaintiffs had any easement for light and air.

The third allegation of the amendment to the petition is that the weight of the standpipe has caused the ground to shift and cracks to come in the yard of plaintiffs. Undoubtedly such allegation constitutes an allegation of physical injury to the property of plaintiffs, which, if proven would justify a recovery for the damage thereby sustained under the rule announced in City of Geary v. Moore, supra. Of course, no such allegation was contained in the original petition, and at the time the amendment to conform to the proof was offered, no evidence whatsoever had been offered or admitted with regard to such allegation, as is attested by the following extract from the record:

> "Court: You ask leave to file an amendment to the petition?
>
> "Mr. Bell: No, to amend the petition to conform to the proof. I will state this if the court please, it might be slightly premature because there is one element there relative to the shifting of the ground that has not yet been placed in evidence, I have another witness on that."

The court, nevertheless, permitted the amendment, over defendant's objection. Furthermore, no proof of the truth of such allegation was offered after the amendment was filed. The only testimony relative to such subject that we have been able to find in the entire record occurred when one of the plaintiffs, Mrs. King, testifying as the last witness for the plaintiffs, was asked to tell what effect the weight of the water tower has, if any, upon her premises, or upon the grounds. After defendant's objection to such question was overruled, Mrs. King made the following answer:

> "Oh well, I don't know about that, but I know that the ground during dry weather cracked some in my back yard."

This was plaintiffs' only testimony on this point, and we are of the opinion that even had it been introduced prior to the amendment, without objection, it would not have been sufficient to support the motion to amend "to conform to the proof". Obviously, the third allegation of the amendment should not have been allowed.

■ The fourth allegation of the amendment to the petition is that during rain storms, water from the top of said standpipe strikes the home of plaintiffs with great force and is washing away their yard. It has been held that where a building or structure is so situated and so constructed that the accumulation of rain, snow, or ice on the roof or its side is discharged on neighboring premises, such discharge may constitute a nuisance, 46 C.J. 700, Nuisances, sec. 149; 66 C.J.S. Nuisances § 74, and we are of the opinion that such allegation constitutes a sufficient allegation of actionable physical injury to plaintiffs' property. While no such allegation is contained in the original petition, we have observed from a review of the record that proof of the trutth of this allegation was introduced in evidence, without objection, prior to the filing of the amendment to the petition or the motion to amend to conform to the proof. It would therefore appear that in so far as the fourth allegation of the amendment to the petition is concerned, it did conform to the proof, and the court therefore did not err in permitting the same.

■ The fifth allegation of the amendment to the petition is that the standpipe increases danger from lightning. No such allegation was contained in the original petition, and no evidence upon which such allegation could be based was introduced. In fact, the only evidence on the subject introduced was to the effect that the standpipe or water tower was properly grounded and created no hazard from lightning to plaintiffs' property whatsoever. Such allegation, therefore, should not have been permitted.

The sixth and last allegation of the amendment is that overflow from said standpipe causes mud to accumulate in front of plaintiffs' home. There was no allegation in the original petition that mud was caused to accumulate in front of plaintiffs' home and no evidence that such was the case was introduced. The evidence introduced with reference to overflow was to the effect that what overflow there might be was caused by the momentum of the water in the pipes after the remote automatic shutoff cuts off the pumps when filling the tower, and that any such overflow was piped from inside the tank to the paved street in front of the tower. Plaintiff himself testified that there was no overflow on to his property or in front of his property. The last allegation of the amendment to the petition should not have been allowed.

■ With regard to defendant's demurrer to the evidence, we are of the opinion that in view of the evidence, entered without objection, that rain accumulating on the roof of the water tower is discharged on to the plaintiffs' premises and against their house, and is washing their yard, the court did not err in overruling such demurrer. The court did err, however, in submitting any issue other than the one just mentioned to the jury. In instructing the jury, the court, in the statement of the case preliminary to the numbered instructions, included all of the allegations of the original petition, none of which, as hereinabove indicated, stated a cause of action, and included all of the allegations contained in the amendment to the petition, all but one of which, as hereinabove indicated, were improperly allowed. In addition, the court instructed the jury as follows:

"In other words, if you find the plaintiffs, by a preponderance of the evidence, are entitled to recover damages the measure of their damages will be the difference in the fair market value of their property immediately before the erection of the water tower and immediately after the same was completed, and in this connection you may take into consideration the disagreeable noise, if any, created by the erection of the tower, their loss of light, if any, and whether or not said tower has caused the ground to shift or cracks to come in to their yard, and whether or not the alleged rain storms caused water from the top of the tower to strike their property with great force and partly wash away their yard, and whether or not the mud has been caused to accumulate in front of their home, and whether or not the value of their property has been decreased by danger of lightning; the danger of falling objects from said tower, and whether said tower is so unsightly as to have depreciated the value of plaintiffs' said property."

All of the items of alleged damage submitted to the jury by the court in the above instructions have been heretofore discussed in detail with the exception of the last two, and we do not find it necessary to repeat such discussion. The item of danger of falling objects from said tower has not been heretofore discussed except to note that it was one of the allegations contained in the original petition, and as so stated therein alleged a conclusion only, no facts upon which to base such conclusion having been pleaded. It should now be additionally noted that there was no evidence introduced whatsoever of the likelihood, or even the possibility, of any objects falling from such water tower, or even that there were any objects on the water tower. The last item, whether said tower is so unsightly as to have depreciated the value of plaintiffs' property, was likewise included in the original petition, and likewise fails to state a cause of action and was not supported by any evidence in any event.

■ We have heretofore placed well defined limitations on damages that are recoverable in actions of this nature. Damages are not recoverable for mere incidental inconvenience to an abutting property owner or an injury consequential in its nature, or one that is remote or far removed and such as is suffered by the community in general. Chicago, R. I. & P. Ry. v. Prig-

more, 180 Okl. 124, 68 P.2d 90; Lindley v. Oklahoma Turnpike Authority, Okl., 262 P.2d 159. The rule stated in the syllabus of City of Geary v. Moore, supra, has already been hereinabove quoted, and in the body of the opinion therein we said:

"There are certain injuries which are necessarily incident to the ownership of property in towns or cities which directly impair the value of private property, for which the law does not and never has afforded any relief. For instance, the building of a jail, police station, or the like will generally cause a direct depreciation in the value of neighboring property; yet that is clearly a case of damnum absque injuria."

The holdings of this court have been consistently in accord with the following statement found at 18 Am.Jur. 767, Eminent Domain, sec. 140:

"It is generally agreed that the damage clause of the state Constitutions has no application to the depreciation of the market value of a parcel of land caused by the establishment of some public building or other public undertaking in close proximity thereto, when there is no physical injury to the property or impairment of any right appurtenant thereto, and the public use is not of such character as would have constituted a nuisance at common law and given rise to an action by an adjoining owner in the absence of statutory protection. Thus, the establishment of a municipal cemetery or a fire engine house, or a jail or a hospital or a school playground in a residential district may have an actual determinable effect on the market value of land in the neighborhood, reducing such value to a considerable degree; but the owners of the property are not entitled to compensation. Similarly it has been held that opening a street close to a certain lot, but taking no part of it, thus bounding it by streets on three sides, rendering it ungainly and unsightly to the public and de-

stroying its privacy and diminishing its value, does not give the owner a right to compensation."

The mere unsightliness of a structure lawfully erected, and not erected out of spite or ill will toward the adjoining land owner, does not constitute a compensable damage to the property of such an adjoining land owner. Bixby v. Cravens, supra.

In view of the errors above set forth, the judgment herein cannot be allowed to stand, and the same is therefore reversed, and the cause remanded with instructions to grant defendant a new trial and to proceed in accordance with the views hereinabove expressed.

DAVISON, HALLEY, JOHNSON, JACKSON, and CARLILE, JJ., concur.

BLACKBIRD, J., concurs in result.

CORN, V. C. J., dissents.