Little Rock, Mississippi River & Texas Railway Company v. Allen.

---

L. R., MISS. R. & TEXAS RAILWAY CO. v. ALLEN.

RAILROAD: *Measure of damages for right of way and how estimated.*
  The measure of damages for the right of way taken by a railroad company across a city or town lot, is the difference between the value of the whole land without the road at the time it was built, and the value of the portion remaining after it is built; and, in estimating this value the jury should consider all present and prospective actual damages resulting to the owner from the prudent construction and operation of the road; the effect the road will have in decreasing

the value of the land for gardening purposes; for the building of stables and outhouses; the dangers occasioned by the risk from fire, the care of family and stock, as well as inconveniences caused by embankments, excavations, ditches and obstruction to the free egress and ingress of the premises, and from the sounding of whistles, ringing of bells and rattling of trains.

APPEAL from *Drew* circuit court.
Hon. T. F. SORRELLS, Circuit Judge.

*Clark and Williams* for appellant.

" Speculative damages, or damages which may be supposed to result as a consequence of locating and operating a railroad within a hundred feet or such a matter to the house of defendant, cannot be taken into account in estimating damage, etc." *Mills on Eminent Domain, pp. 158–9.*

The substance of the fourth instruction of the respondent, which was objected to, is as follows :

" The jury may consider the effect the railway will have in decreasing the value of the lands for gardening purposes—for the building of stables and outhouses, the damages occasioned by risk from fire, the care of family and stock, as well as inconvenience caused by embankments, excavations, ditches and obstructions to the free egress and ingress of the premises," etc. This was error. The true rule for assessing damages is the value of the property before taken by the company, and the value afterwards, the difference constitutes the damages to be recovered. In other words, the amount the property is diminished in value for *all purposes, and not for any particular purpose. Mills on Eminent Domain, 166, 167.*

*W, T. Wells* for appellee.

1. Before property or right of way can be appropriated to a railway, full compensation must be first made to the owner, or deposited in court. *Const., Art. XII, sec. 9*

Littie Rock. Mississippi River & Texas Railway Company v. Allen.

*and Art. II, sec. 22; 1 Redf., 296–7; 301, 369, 381; 15 Ohio, (N. S.) 21.*

2. When the property sought to be appropriated is city property and improved, see *1 Redf., 277–8, and note 279, 280–1–2, and notes 283–4–8 and note to 289, 302–3–5, note to 308, 318, 358, 360–8–70; 13 Barb., 169; 31 Cal., 367; 8 Watts, 243; 2 Zab., 495; 5 Rich. 428; 17 B. Mon., 173, 180; 17 Ib., 738–49; Barl., 108; 10 Minn., 267; 13 Wall, 166; 34 Miss., 227; 47 Penn. St., 319; 4 Rich, 107; 6 Allen, 115; 7 Metc., 78; 103 Mass., 10; 4 Jones, L., 89; 18 Ill., 257; 40 Penn. St., 53; 15 Ill., 488; 5 Gray, 35. 105 Mass., 303.*

3. It was competent for the jury to consider present and prospective damages, irrespective of any improvements. *1 Redf., 278; 24 N. H., 170; 28 Vt., 103; 46 Penn. St., 520; 4 Ohio. (N. S.) 308; 6 Ib., 182; 25 Mo., 544.*

SMITH, J. The railway company filed its petition to have he damages assessed for its appropriation of the right of way arcoss a lot in the town of Monticello, alleging that the damage did not exceed $125. The lot owner answered the petition, and claimed that he was damaged to the amount of $500.

The dimensions of the lot were one hundred and fifty feet in front and running back at right angles three hundred and five feet. Through its whole extent, from east to west, the railroad was located. The land actually appropriated was a strip sixty feet in length and in width one hundred and fifty feet. But the owner's fences and stables were torn down, and the lot which was adapted to and used for the purpose of a residence, was severed in two parts, leaving a parcel thirty-seven feet wide on the south side of the railroad, while the main body, two hundred and eight feet wide, lay

north of the road.  Only about one-fifth of the lot was taken ; but the remainder was cut up into inconvenient parcels and the facility of communication between the severed portions was impaired.  Moreover, in order to make the grade level, an embankment four or five feet high was thrown up for the distance of seventy-five feet and earth pits were excavated,  The place for a kitchen, garden, stables and outhouses was considerably curtailed.

The diminution in the market value of the property, by reason of the location of the road, was variously estimated by witnesses familiar with the surroundings, all the way from the amount conceded by the petitioning company to the amount claimed by the respondent.  One of the plaintiff's own witnesses swore the lot was in his judgment worth $1,400 before the road was run across it, and between $1,000 and $1,100 afterwards.  Another witness, who had been tax assessor for his county, estimated the property at $1,200 before the road was built, and considered its value impaired to the extent of one-third.

Much evidence was gone into with regard to the situation of the premises and the extent of the injury.  The jury, under charge of the proper officer, were permitted to take a view of the property which was the subject of litigation. And they assessed the damages at $375.

Damages for right of way to railroads.  It was objected below,  and it is insisted here that the damages awarded were excessive ; and that the court erred in refusing one of the petitioner's prayers and in giving two instructions at the instance of respondent.

The instruction so refused was as follows :

" Speculative damages, or damages which may be supposed to result as a consequence of locating and operating a railroad within a hundred feet or such a matter to the house of defendant, cannot be taken into account in estimating damages, etc.''

The instructions for the respondent that were objected to were these :

" 3. The correct rule for measuring damages is to determine the value of the whole land without the railway at the time the same was built, then find the value of the portion remaining after the railway is built, and the difference between the two estimates will be the true compensation to which the party owning the land is entitled.

" 4. The jury, in estimating the damages, must consider all the present and prospective actual damages to which the owner of the land will be entitled by the prudent construction and operation of the road. They may consider the effect the railway will have in decreasing the value of the land for gardening purposes, for the building of stables and outhouses, the dangers occasioned by risk from fire, care of family and stock, as well as inconveniences caused by embankments, excavations, ditches, and obstructions to the free ingress and egress of the premises. All these must be taken into account in estimating damages. "

The jury had been told, in other instructions, to disregard all speculative or consequential damages, and to restrict their award to the damages to the lot. This meant that the damage must naturally flow, and not remotely result, from the injury complained of ; and that no damages were to be considered except such as were peculiar to the lot-owner and not suffered by him in common with the rest of the community. But the rejected prayer sought to make the court go one step further and declare that the bringing of the owner's dwelling-house into proximity to a railroad was not a proper element of damage. This is not the law. The inconveniences and disadvantages from the sounding of whistles, the ringing of bells and the rattling of trains ; the exposure of the premises to fire ; the increased danger of injury to members of the family and live stock are not speculative, but real. They diminish the vendible value of residence prop-

erty. And just compensation means not merely the value of the land taken, but indemnity for the uses to which it is applied. *Mills on Eminent Domain, sec. 162.*

The fourth instruction for the respondent embodied the true rule. The jury are to consider all past, present and future damages which the construction of the road may reasonably produce.

The third instruction for the respondent—as to the measure of damages—is taken almost word for word from *1 Redf. on Railways, 3rd. Ed., p. 263.*

It is in substance the same rule that was announced by this court in *St. Louis, Ark. and Tex. R. R. v. Anderson, 39 Ark., 167.* It is the rule laid down in *Mills on Eminent Domain. sec. 166,* and in *Pierce on Railroads, p. 211.*

The jury were properly charged. And their verdict is not so extravagant as to indicate that it was given under the influence of passion or prejudice. It was their province to hamonize the testimony and to determine on which side the preponderance lay. And if in this they came to a wrong conclusion, it was the duty of the circuit court to set aside their finding on a motion for a new trial. But this court cannot undertake to average the testimony of witnesses where there is a conflict.

Judgment affirmed.